952 So.2d 517 (2007)
In re AMENDMENTS TO THE FLORIDA RULES OF JUVENILE PROCEDURE.
No. SC05-1303.
Supreme Court of Florida.
March 15, 2007.
Mary Katherine Wimsett, Chair, Gainesville, Florida, Alan Abramowitz, Past-Chair, Orlando, Florida, Juvenile Court Rules Committee, John F. Harkness, Jr., Executive Director, Ellen H. Sloyer, Bar Liaison, The Florida Bar, Tallahassee, Florida, for Petitioner.
Karen Gievers, Children's Advocacy Foundation, Tallahassee, Florida; Bernard P. Perlmutter, University of Miami School of Law Children and Youth Law Clinic, Coral Gables, Florida; John J. Copelan, Jr., General Counsel, Peggy Sanford, Deputy General Counsel, and Rebecca Kapusta, Assistant General Counsel, the Florida Department of Children and Families, Tallahassee, Florida; Dennis W. Moore, General Counsel, Statewide Guardian ad Litem Program, Tallahassee, Florida; and Robert S. Jacobs, Advocacy Center for Persons with Disabilities, Inc., Tampa, Florida, and Sylvia W. Smith, Advocacy Center for Person with Disabilities, Inc., Tallahassee, Florida, Responding with comments.
PER CURIAM.
In November 2005, the Court, on petition by the Juvenile Court Rules Committee, adopted a number of amendments to the Florida Rules of Juvenile Procedure in response to then recent legislation. See In re Amend. to Fla. Rules of Juv. Pro., 915 So.2d 592 (Fla.2005). Upon considering the proposals and reviewing the relevant legislation, the Court adopted the amendments as proposed and allowed interested persons to file comments within sixty days after the Court's opinion. Id. at 592.[1]
One of the amendments adopted by the Court was new rule 8.355, entitled Administration of Psychotropic Medication to a Child in Shelter Care or in Foster Care When Parental Consent Has Not Been Obtained. New rule 8.355 provides procedures to implement section 39.407(3), Florida Statutes (2006), which was created by chapter 2005-65, section 2, Laws of Florida. Section 39.407(3) requires court authorization for the administration of psychotropic medication to children in shelter or foster care when parental consent cannot be obtained. The new rule sets forth procedures governing a motion by the Department of Children and Families and a court order for administration of psychotropic medication, as required by section 39.407(3)(c). It also creates procedures for emergency situations such as when a delay in authorization could cause significant harm or when the child has been placed in a psychiatric facility on an emergency basis.
The Children's Advocacy Foundation, Inc., the University of Miami School of Law Children and Youth Law Clinic, Florida's Children First, Jacksonville Area Legal Aid, University of Miami Law Professor Bruce J. Winick, and Dr. Lester P. *518 Hartswick, M.D.[2] filed comments with regard to new rule 8.355. No comments were received with regard to any of the other amendments.
After consideration of the comments received with regard to rule 8.355, the Court directed that this case be set for oral argument, and an order was issued specifically inviting additional comments from the Guardian Ad Litem Program and the Florida Department of Children and Families. The Court also requested that the Juvenile Court Rules Committee file a response to all comments filed with the Court. Oral argument was heard in this matter on October 30, 2006.
The main issue raised by the comments and at oral argument is whether rule 8.355 should be amended to require the appointment of a guardian ad litem and an attorney ad litem to represent the child in proceedings under the rule. The comments contend that requiring such representation is necessary to ensure that the court's decision to authorize the administration of psychotropic medication is informed by accurate and up-to-date information about the health status and needs of the child. Further, they raise the concern that without representation, it may be impossible for a child to meaningfully voice objections to the prescribed treatment and participate in a hearing as provided in the statute.
The Court shares the concerns expressed in these comments. Before authorizing the administration of psychotropic medication to children in the care and custody of the State, it is essential that a court have access to the information necessary to make an informed decision. Additionally, it is important that the child be afforded the opportunity for meaningful, age-appropriate participation in the process. Section 39.407(3) provides the right of any party to object to a motion for court approval of administration of psychotropic medication within two working days of being notified of the motion. If such an objection is filed, the court must hold a hearing on the motion. However, without representation, it is unlikely that the most interested party, the child to whom the medication is to be given, would be able to exercise the right to object to the motion, much less meaningfully participate in a hearing.
Although we agree that in many cases, representation of the child is essential in these proceedings, we decline to insert a requirement for such representation into rule 8.355 for several reasons. First, in the interest of ensuring that the decision to medicate a child is fully informed, section 39.407(3) imposes detailed requirements upon the Department of Children and Families. The statute mandates that at the time the department seeks a medical evaluation to determine the need for psychotropic medication for a child, it must provide to the evaluating physician all pertinent medical information known to the department concerning that child. § 39.407(3)(a)(2), Fla. Stat. (2006). If a motion is ultimately filed seeking court approval to administer the medicationwhich will only occur if parental consent cannot be obtainedthe motion must be supported by the prescribing physician's signed medical report, which must include a "statement indicating that the physician has reviewed all medical information concerning the child which has been provided." § 39.407(3)(c)(2), Fla. Stat. (2006). *519 The statute also requires that the prescribing physician's medical report include: (1) the name and dosage range of the medication; (2) a statement that there is a need for the prescribed medication based upon the child's diagnosed medical condition; (3) a statement that the prescribed medication is appropriate for treatment of the child's diagnosed medical condition and the behaviors and symptoms the medication is expected to address; (4) an explanation of the nature and purpose of the treatment, the risks, side effects, and contraindications of the medication, drug interaction precautions, possible effects of discontinuing the medication, and how treatment will be monitored; (5) a statement that the aforementioned explanation was provided to the child, if age-appropriate, and to the child's caregiver; (6) documentation addressing whether the medication will replace or supplement other currently prescribed medications or treatments; (7) documentation addressing the length of time the child is expected to take the medication; and (8) documentation addressing "any additional medical, mental health, behavioral, counseling, or other services that the prescribing physician recommends." § 39.407(3)(c)(1)-(5), Fla. Stat. (2006).
Further, at any hearing held on a motion for court authorization to administer psychotropic medication, the court must ask the department "whether additional medical, mental health, behavioral, counseling, or other services are being provided to the child by the department which the prescribing physician considers to be necessary or beneficial . . . and which the physician recommends or expects to provide to the child in concert with the medication." § 39.407(3)(d)(1), Fla. Stat. (2006); see also Fla. R. Juv. P. 8.355(b)(2)(B). The court is also authorized to order additional medical consultation and to require the department to obtain a second opinion. § 39.407(3)(d)(1), Fla. Stat. (2006); see also Fla. R. Juv. P. 8.355(b)(1). Through all of the above provisions, the statutory language and the rule attempt to ensure that the court's ruling on the motion for court authorization to administer the medication is based upon the most complete medical information that is available.
Second, the Legislature has declared its intent and goal that all dependent children "have a guardian ad litem appointed to represent, within reason, their best interests, and where appropriate, an attorney ad litem appointed to represent their legal interests." § 39.4085(20), Fla. Stat. (2006). By statute, a guardian ad litem must be appointed by the court "at the earliest possible time . . . in any child abuse, abandonment, or neglect judicial proceeding." § 39.822(1), Fla. Stat. (2006). Additionally, at every shelter hearing, often the first point at which a child who has been taken into custody by the department comes into contact with the court system, the court is required to "[a]ppoint a guardian ad litem to represent the best interest of the child, unless the court finds that such representation is unnecessary." § 39.402(8)(c)(1), Fla. Stat. (2006).[3] Accordingly, it would appear that in most cases, children in the custody and care of the department should already have representation in the form of a guardian ad litem.
Moreover, at any stage of a dependency proceeding, including the filing of a motion for court authorization to administer psychotropic *520 medication, the court is authorized under rule 8.215 to appoint a guardian ad litem and, in fact, is required to "ascertain at each stage of the proceeding whether a guardian ad litem should be appointed if one has not yet been appointed." Fla. R. Juv. P. 8.215(b). Similarly, under Florida Rule of Juvenile Procedure 8.217, the court, at any stage of a dependency proceeding, "may consider whether an attorney ad litem is necessary to represent any child alleged to be dependent, if one has not already been appointed." Fla. R. Juv. P. 8.217(a). Under these provisions, if the department were to file a motion for court authorization to administer psychotropic medication to a child not already represented by a guardian ad litem or attorney ad litem, the court would have the discretion to appoint such representation for the child. Given the reality that Florida is still working toward full funding to meet the legislative goal that all dependent children be represented by a guardian ad litem and, where appropriate, an attorney ad litem, we conclude that discretion to appoint such representation for a child in the limited context of proceedings for court authorization of administration of psychotropic medication should remain with the trial court, to be exercised on a case-by-case basis. Accordingly, we decline to amend the language of the rule to eliminate that discretion.
In its comments and arguments, the Guardian Ad Litem Program has suggested two additional amendments to rule 8.355 that bear discussion. The program first suggests that the rule be amended to require the presence of the child at a hearing on a motion for court authorization to administer psychotropic medication to the child. As for this suggestion, while we decline to amend the rule to require the presence of the child in all cases, we note that nothing in the statute or current rule precludes the presence of the subject child at the hearing. Additionally, as discussed above, we recognize the importance of affording the child the opportunity for meaningful, age-appropriate participation in the process, and we encourage courts to allow the presence and participation of the child where appropriate.
The Program also suggests that the rule be amended to clarify that a party may still file an objection to psychotropic medication even after a court, on the department's motion, authorizes the administration of the medication. Section 39.407(3)(d)(1) states that "[i]f any party objects to the department's motion, that party shall file the objection within 2 working days after being notified of the department's motion." § 39.407(3)(d)(1), Fla. Stat. (2006). If an objection is filed, the court must hold a hearing "as soon as possible before authorizing the department to initially provide or to continue providing psychotropic medication to a child in the legal custody of the department." Id. Thus, while the provisions of the statute would permit a court, in the absence of a timely objection, to authorize the administration of psychotropic medication without a hearing, and the rule as adopted so provides,[4] nothing in the statute expressly precludes a party from filing an objection after the two-day time limit has passed and having that objection addressed by the court at a hearing. Certainly, changed circumstances or subsequent medical or psychiatric evaluations could warrant discontinuation of, or a change in, medication for the child. The statute clearly does not preclude the court from entertaining such an objection, and we encourage vigilance on the part of the courts in attending to these matters.
*521 In conclusion, for the reasons explained above, we decline to amend rule 8.355, Administration of Psychotropic Medication to a Child in Shelter Care or in Foster Care When Parental Consent Has Not Been Obtained, as suggested in the comments provided by interested parties in this matter. We also wish to express our sincere appreciation for the hard work and vigilance of the Juvenile Court Rules Committee in addressing the matters presented herein and thank all those participating in this process in the interest of Florida's children.
It is so ordered.
LEWIS, C.J., and WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
ANSTEAD, J., concurring in part and dissenting in part.
While I generally concur in the observations of the majority, I cannot agree that the need for the appointment of either a guardian ad litem or attorney ad litem should not be mandated at the time the Department of Children and Families seeks to have psychotropic medication administered to a child in its custody. It is apparent that in seeking the administration of such medications the Department has identified a child that has serious medical and mental health issues, and, in turn, a child that has a special and priority need for the services of a guardian or attorney ad litem to make certain that the child's interests are given particularized attention. This Court has not been reluctant to recognize the special needs of children with mental health issues and we should not hesitate to recognize those needs here. Cf. M.W. v. Davis, 756 So.2d 90 (Fla.2000) (mandating meaningful opportunity to be heard for child before placement in mental health facility).
Although I sympathize with the majority's concerns about the use of limited resources, it seems apparent that some form of prioritization is necessary and already in place in the system for allocation of guardian resources. However, the existing method for allocating such resources is largely haphazard and varies from location to location despite the commendable efforts of the GAL program to bring about uniformity. By identifying a class of children with serious medical or mental health issues as particularly in need of guardian services we would be helping rather than hindering the present system.
PARIENTE, J., concurs.
PARIENTE, J., concurring in part and dissenting in part.
Even in the absence of a specific rule requirement, I urge all trial judges to ensure that children have the necessary representation and an opportunity to be heard in court before making critical decisions regarding the administration of psychotherapeutic (psychotropic) medication.[5] *522 The Legislature's 2005 enactment of the provisions in section 39.407(3), Florida Statutes (2006), reflects a widespread concern about the appropriate administration of psychotropic medication to children in foster care.[6] The legislation also reflects the view that psychotropic medication should only be administered on an individual basis, with proper monitoring, and in combination with other behavioral health services. Although the Department of Children and Families (DCF) reported a slight percentage decline in the use of psychotropic medication by children of all age groups in DCF's care between September-November 2004 and September-November 2005, almost twelve percent of the children in DCF's care received one or more of these medications.[7] In addition, DCF noted that the number of children ages thirteen through seventeen receiving psychotropic medication increased during this period, particularly among those in "licensed substitute care" and "out-of-home care."[8] These numbers are startling, with 44.7 percent of those children in "licensed substitute care" (up from 32.7 percent) and 32 percent of those children in "out-of-home care" (up from 26.4 percent) receiving one or more psychotropic medications.[9]
The statute requires DCF to follow detailed procedures before administering these medications. See § 39.407(3), Fla. Stat. Among these procedures is the right of any party to object to administration of psychotropic medication. See § 39.407(3)(d)(1), Fla. Stat. (2006). I therefore agree with Justice Anstead that the rule should at the very least mandate that a Guardian Ad Litem (GAL) or Attorney Ad Litem (AAL) be appointed for any child who may be administered psychotropic medication to ensure that the child has a meaningful opportunity to be heard before such a significant decision.[10] A rule providing for the appointment of a GAL or AAL would do no more than effectuate the right to be heard granted by the statute.
By pointing to other statutory provisions and our existing rules that provide trial courts with authority to appoint GALs and AALs for children, the majority assumes *523 that many of these children already have representation. Unfortunately, we were unable to obtain statistics showing the exact number of children who are unrepresented at the point DCF seeks approval for the administration of psychotropic medication. This case highlights the need for a uniform statewide system that tracks all children in the foster care system, includes this type of detail, and ensures that this information is made available to the courts.[11] While DCF and the judicial system have been working together to ensure appropriate case management, much remains to be done.
This case also highlights the compelling need for full legislative funding of the statutory mandate requiring a guardian ad litem for each child in foster care. As of August 2006, there were 43,765 children under DCF supervision and involved in court proceedings. See Guardian Ad Litem 2006 Annual Report 3. The Statewide GAL Office represented 28,179 of those children, and its goal by December 2006 was to represent 32,787 children. See id. This target, when met, means that the Statewide GAL Office will be providing representation in approximately 75% of these cases.[12] Clearly, children DCF has identified as requiring psychotropic medication should be among those who not only receive GAL representation but also receive representation through an attorney knowledgeable about these issues.
As the majority points out, it is the intent of the Legislature that all dependent children have a "guardian ad litem appointed to represent, within reason, their best interests, and where appropriate, an attorney ad litem appointed to represent their legal interests." § 39.4085(20), Fla. Stat. (2006). I acknowledge that the legislative and executive branches have made enormous strides in the past several years in increasing funding to the Statewide GAL Office.[13] I urge that this year, the State fulfill this statutory mandate by fully funding the GAL Office so that each child has, at a minimum, guardian ad litem representation, and attorney ad litem representation where necessary.[14] In my view, this State should do no less for our most vulnerable childrenthose who are in the court system because of an adult's abuse, neglect, or abandonment.[15] The *524 benefits of full funding for GALs and AALs for children include ensuring that children's voices are heard, that children receive needed services while in foster care, and that everything possible is done to reduce the amount of time these children are without permanent homes.
ANSTEAD, J., concurs.
NOTES
[1] We have jurisdiction. See art. V, § 2(a), Fla. Const.
[2] The University of Miami School of Law Children and Youth Law Clinic, Florida's Children First, Jacksonville Area Legal Aid, University of Miami Law Professor Bruce J. Winick, and Dr. Lester P. Hartswick, M.D. filed a joint comment, which was also subsequently joined by the Advocacy Center for Persons With Disabilities, Inc.
[3] The guardian ad litem must be a responsible adult, who may or may not be an attorney, or a certified guardian ad litem program. The guardian ad litem is charged with gathering information concerning matters arising in the case and filing a written report, including "a summary of the guardian ad litem's findings, a statement of the wishes of the child, and the recommendations of the guardian ad litem." Fla. R. Juv. P. 8.215(c)(1).
[4] See Fla. R. Juv. P. 8.355(b)(1).
[5] In general terms, psychotropic medication is "any medication capable of affecting the mind, emotions, and behavior." Kate O'Leary, An Advocate's Guide to the Use of Psychotropic Medications in Children and Adolescents 25 ABA Child L. Prac. 85, 85 (Aug. 2006). The seven most common psychotic disorders are schizophrenia, bipolar disorder, depression, psychotic depression, attention deficit/hyperactivity disorder, anxiety, obsessive compulsive disorder, and panic disorder. Id. There is no definition of psychotropic medication in chapter 39, Florida Statutes. But see § 916.12(5), Fla. Stat. (2006) (defining "psychotropic medication" as "any drug or compound used to treat mental or emotional disorders affecting the mind, behavior, intellectual functions, perception, moods, or emotions and includes antipsychotic, antidepressant, antimanic, and antianxiety drugs"); § 1006.0625, Fla. Stat. (2006) (defining "psychotropic medication" as "a prescription medication that is used for the treatment of mental disorders and includes, without limitation, antihypnotics, antipsychotics, antidepressants, anxiety agents, sedatives, psychomotor stimulants, and mood stabilizers").
[6] Frank M. Platt, Fla. Dep't of Children and Families, Report Mandated by Chapter 2005-65 of the Laws of Florida, Section 5 Mental Health Services for Minors and Incapacitated Persons (Psychotherapeutic Medications) 1 (2006).
[7] Florida Department of Children and Families, Report to the Senate Committee on Children and Families: Ensuring Appropriate and Informed Use of Psychotherapeutic Medications for Florida's Children in DCF Care and Custody 1 (2006). DCF also reported that "[a]n estimated 40 percent of the child welfare population meet criteria for serious emotional disturbance (SED) compared to 10 percent of children in the general population." Id. The report does not define SED or discuss the reason for the disparity between the number of children who meet the criteria for SED and the number of children receiving psychotropic medications. Hopefully, the children with SED are receiving other services and therapies to address these serious emotional issues.
[8] Id. at 4.
[9] Id.
[10] I would follow the recommendations of the various child advocacy groups that recommend both an appointed GAL and AAL.
[11] HomeSafeNet is a statewide database created by DCF. DCF's October 2006 report states that "enhancements" have been made "to include information on medication use and thereby provide the ability to more intensively monitor use of psychotherapeutic medications in Florida's child welfare system" in real time. Report to the Senate Committee on Children and Families, supra note 7, at 5.
[12] The GAL Office, in its comment to this Court, states that the "GAL uses a team consisting of a volunteer or staff member and an attorney to represent the child's best interests in the proceedings."
[13] Funding for the GAL Office rose from $10.4 million during the 2003-2004 fiscal year to $34 million for the 2006-2007 fiscal year. However, the current GAL funding is miniscule when viewed in light of the 2006-2007 State of Florida budget of $70.9 billion.
[14] I recognize that the GAL Office expressed concern that due to limited resources, a rule requiring appointment of GALs in all cases in which DCF moves to administer psychotropic medication would force the program to withdraw from current cases. Full funding of the GAL Office would obviate the need to make difficult choices as to which children are afforded representation in dependency proceedings.
[15] Hopefully, this statutory mandate can be fulfilled without placing the judicial branch in budgetary competition with the GAL Office. Unfortunately, in the past few legislative sessions, the judicial branch has been forced to compete with the GAL Office for these scarce resources even though the total budget of the judicial branch is less than one percent (0.6%) of the total state budget of $70.9 billion.